UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-vs-

JAMES BROME,
                Defendant.

DECISION AND ORDER

11-CR-6089-CJS-JWF-1

**APPEARANCES**

| | |
|---|---|
| For the United States | Grace M. Carducci, A.U.S.A.<br>United States Attorney's Office<br>500 Federal Building<br>Rochester, New York 14614<br>(585) 263-6760 |
| For the Defendant | Steven Y. Yurowitz, Esq.<br>950 Third Avenue – 32nd Floor<br>New York, NY 10022<br>(212) 308-7900 |

**INTRODUCTION**

**Siragusa, J.** On April 20, 2016, the U.S. Court of Appeals for the Second Circuit issued a decision vacating this Court's October 4, 2013, Order, ECF No. 246, docketed on October 7, 2013. The Order denied the "Petition for the Return of Illegally Seized Property Pursuant to Federal Rules of Criminal Procedure Rule § 41(g)," filed by defendant James Brome, also known as Trouble and as B ("Brome"), which he had filed on September 23, 2013, ECF No. 244. The Mandate, issued on May 11, 2016, ECF No. 326, remanded the matter for proceedings consistent with the Second Circuit's order. For the reasons stated below, the Court determines that the method used to notify Brome of the administrative forfeiture of currency taken from his person was sufficient.

## PROCEDURAL BACKGROUND

At issue is whether the defendant received sufficient notice in connection with an administrative forfeiture of $21,019.00 U.S. currency taken from him on September 12, 2010, by law enforcement officers of the Lyons, New York, police department. The procedural background is laid out in the Second Circuit's Mandate:

> Though Brome did not file a complaint under CAFRA, and instead filed a motion under Rule 41(g), the government concedes that this was not fatal to the district court's jurisdiction given that Brome was *pro se* at the time. The government argues only that Brome's failure to "assert a lack of notice claim in the district court" ensured that his petition failed to confer jurisdiction on the district court. *See* Appellee Br. at 1. Though Brome's petition was hardly clear in making a notice argument, we conclude that the petition, in reciting the relevant facts, did include an allegation—whether ultimately proved correct or otherwise—that Brome never received notice of the forfeiture. *See* App'x at 189 (stating that Brome "has [written] not less than three-(3) letters asking for the return of money seized on September 12, 2010" and that "all letters have gone unanswered to date"). In light of the fact that the district court denied the motion without either the court or the government first notifying Brome—in the context of this proceeding—of the administrative forfeiture, thus potentially providing Brome an opportunity to respond, we also conclude that these statements sufficiently raised a notice challenge under the liberal construal standards for *pro se* parties. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (citation and internal quotation marks omitted)).

Mandate at 3.

On May 4, 2016, the government filed papers with the Court in support of its position that the notice Brome received was sufficient. Memorandum/Brief in Support of the Sufficiency of the Notice that was Provided by the Drug Enforcement Agency ("DEA") in Connection with the Administrative Forfeiture, ECF No. 325. Broom filed opposing papers on June 27, 2016, ECF No. 331.

## FACTUAL BACKGROUND

The currency at issue was found by a Lyons police officer after he made a traffic stop of the car in which Brome was a passenger based on the driver's alleged failure to keep right,

an infraction. The officer subsequently learned that neither Brome nor his driver had a valid driver's license, so impounded the car. In the process, the officer conducted an inventory search of the impounded car, but prior to conducting the inventory, placed Brome in the back seat of his patrol vehicle, after learning that Brome was on parole based on a felony weapon's conviction. Before putting Brome in the car, the officer patted down his clothing and found the currency in Brome's pants pocket, which the officer took. *See* Transcript of Suppression Hearing at 5–20, Apr. 17, 2012, ECF No. 325-2.

Turning to the administrative forfeiture, the government has provided the declaration of Vicki L. Rashid, the Forfeiture Counsel at DEA. Rashid Decl. May 4, 2016, ECF No. 325-2 (Ex. 7). The currency at issue was seized by the Lyons Police Department on September 12, 2010, and DEA "adopted this seizure" on October 7, 2010. *Id*. ¶ 4(a).[1] Ms. Rashid states that on November 3, 2010, her office sent written notice to James S. Brome, 210 W. 230 Street, Apartment 8D, Bronx, NY 10463, but that the notice was returned by the U.S. Postal Service on November 28, 2010, with the following notation: "RETURN TO SENDER. UNCLAIMED. UNABLE TO FORWARD." *Id*. ¶ 4(b). Pursuant to 19 U.S.C. § 1607(a), DEA then published notice of the seizure of the currency in *The Wall Street Journal* once per week for three successive weeks. On December 27, 2010,[2] DEA sent written notice by certified mail to James S. Brome, Prisoner ID No. 101700, Wayne County Jail, 7368 New York 31, Lyons, NY 14489. *Id*. ¶ 4(e) & 4(f). The notice sent by mail is included in Ms. Rashid's declaration as her Exhibit 5 and

---

[1] Defense counsel points out that the notices the government sent to the defendant and published in the newspaper all listed the seizure date of October 7, 2010, and not September 12, 2010. Defendant's Memorandum of Law in Opposition to the Government's Memorandum of Law Concerning the Sufficiency of Notice Provided by the DEA 6, Jun. 27, 2016, ECF No. 331.

[2] Although Ms. Rashid states in her declaration that the notices were sent by certified mail on December 27, 2010, and refers to her Ex. 6 to show that at least one was signed for, the date on the return receipt, her Ex. 6, is "12/21." *See* Rashid Decl. Ex. 6.

provided a deadline of 30 days from receipt of the notice to request remission or mitigation, or to contest the forfeiture. Rashid Decl. Ex. 5.

Brome points out that although the government was present at Brome's arraignment and probable cause hearing in Lyons, New York, and that counsel represented Brome, no notice was ever given to his counsel. Def.'s Mem. of Law 7–8. Brome was subsequently prosecuted in Federal Court for a narcotics offense and plead guilty before the undersigned. At the April 17, 2012, suppression hearing before the Honorable Jonathan W. Feldman, U.S. Magistrate Judge, the following exchange took place between the prosecutor, Mr. Marangola, and Judge Feldman, regarding the basis for the seizure of currency from Brome:

> THE COURT: I understand the statements, but the physical property that's at issue here is the currency?
>
> MR. MARANGOLA: Yes.
>
> THE COURT: And that has seized, when? Right at the scene?
>
> MR. MARANGOLA: Yes. Right during the pat-frisk.
>
> THE COURT: What's the basis for seizing it?
>
> MR. MARANGOLA: The legal basis?
>
> THE COURT: Yeah.
>
> MR. MARANGOLA: His belief that the defendant was armed and dangerous.
>
> THE COURT: No. Once he determined it was money, what was the basis for seizing it?
>
> MR. MARANGOLA: After it had already been removed from his pockets? I guess I don't understand.
>
> THE COURT: Was he placed under arrest?
>
> MR. MARANGOLA: Not that night, he wasn't. But he was later placed under arrest.
>
> THE COURT: So he was given the money back? Or he was—
>
> MR. MARANGOLA: No, he wasn't. He wasn't given the money back. He was given

> a receipt for the money.
>
> THE COURT: Was he released that evening?
>
> MR. MARANGOLA: Yes. Then they sent him a forfeiture notice, which he declined to oppose and the money was kept.
>
> THE COURT: It was seized pursuant to the Government's intention to forfeit the funds as being connected to illegal activity?
>
> MR. MARANGOLA: I think it was seized pursuant to the pat-frisk. That was the lawful basis for holding it, for removing it from the defendant.
>
> THE COURT: That was the lawful basis for removing it, allegedly.
>
> MR. MARANGOLA: Yes.
>
> THE COURT: But for holding it, it was—I mean, you gave him a receipt. You didn't give it back to him.
>
> MR. MARANGOLA: Right.
>
> THE COURT: Holding it was for forfeiture proceedings?
>
> MR. MARANGOLA: I think that's accurate.
>
> THE COURT: Okay.

Trans. 41:7–43:3. Following the close of proof at the Federal suppression hearing, defense counsel and the Court engaged in a discussion, which Brome argues is pertinent to this Court's decision on the issue of notice to him concerning the administrative seizure:

> MR. KONOSKI: I believe that—my opinion is that the seizure of the money was an illegal seizure, regardless—even assuming that the entire stop and the entrance into my client's pants pockets was lawful, which I don't think it is, but even if it was lawful, my client hadn't committed any crime.
>
> THE COURT: Right. But I guess you get back to the issue of whether it's the discovery of the money which you want to suppress or the seizure of the money you want to suppress. I suppose the seizure of the money could be contested in the forfeiture allegation. You could always try to get the money back.

Trans. 79:11–24; Def.'s Mem. of Law 9–10.

## STANDARD OF LAW

The administrative forfeiture of property worth less than half a million dollars is controlled by 19 U.S.C. § 1607(a), which provides in pertinent part as follows:

> [T]he appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

The district court has limited jurisdiction following a forfeiture to address claims of lack of notice. The requirements for making a motion to set aside forfeiture are as follows:

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e).

## ANALYSIS

Although the government argues here that Brome never raised the issue of insufficient notice on appeal, the Second Circuit has foreclosed that argument by finding that his papers sufficiently indicated that challenge to the forfeiture. Summary Order at 3, *United States v. Brome*, No. 13-4008-cr (2d Cir. Apr. 20, 2016) ("we conclude that the petition, in reciting the relevant facts, did include an allegation—whether ultimately proved correct or otherwise—that Brome never received notice of the forfeiture."). Therefore, the Court will not address the issue of whether Brome raised the lack of notice in his Rule 41(g) motion for return of the currency.

The government contends that in order to meet its burden, it need not show that written notice was actually received by Brome. The government relies in part on the Supreme Court's holding in *Dusenbery v. United States*, 534 U.S. 161 (2002). There the majority opinion contains the following language:

> Here, the use of the mail addressed to petitioner at the penitentiary was clearly acceptable for much the same reason we have approved mailed notice in the past. Short of allowing the prisoner to go to the post office himself, the remaining portion of the delivery would necessarily depend on a system in effect within the prison itself relying on prison staff. We think the FBI's use of the system described in detail above was "reasonably calculated, under all the circumstances, to apprise [petitioner] of the action." Due process requires no more.

*Dusenbery*, 534 U.S. at 172–73 (citation omitted). The government described in detail the steps involved in delivering the notice sent to Brome in jail.³ In his affidavit, Correction Lieutenant David Ambeau of the Wayne County Office of the Sheriff, described the method by which mail was delivered to inmates in the Wayne County Jail. Ambeau Aff., May 4, 2016, ECF No. 325-2. The mail sent by DEA to Brome was logged when received on December 29, 2010, as shown by the exhibit attached to Ambeau's affidavit. Abeau Aff. ¶ 3 & Ex. A. Once logged, the mail was given to a roving officer who then delivered the mail to each inmate. *Id*. ¶¶ 4–6. The log proves DEA's letter was received at the jail, and Ambeau's affidavit shows the regularity of the process of delivering mail to the inmates at the Wayne County Jail, where Brome was housed at the time.

Brome, however, asserts that the DEA did not know at the time it sent notice to Brome that the Wayne County Jail had a system in place to ensure the delivery to Broom would be completed. Consequently, he maintains, the notice fails to meet the requirement that at the time it served Brome, DEA knew "that its efforts to provide Brome with notice was reasonable."

---

³ As the government concedes, having the notice returned as undeliverable would require additional steps to get notice to the potential claimant.

Brome Mem. of Law 14, Jun. 27, 2016, ECF No. 331. Brome relies on the Third Circuit's holding in *United States v. One Toshiba Color TV*, 213 F.3d 147, 155 (3d Cir. 2000), in which that court wrote:

> We hold that, while the government need not prove actual notice to the prisoner, if it chooses to rely on less than actual notice, it bears the burden of demonstrating the existence of procedures that are reasonably calculated to ensure that such notice will be given. Thus, our rule requires the government to ensure that proper procedures are employed in the facilities where it chooses to house its prisoners. Of course, if there is a signed receipt from the served party, the government does not then have to prove anything about the procedures that were in place.

*One Toshiba Color TV*, 213 F.3d at 155 (footnotes omitted). The Second Circuit held in *Yeung Mung Weng v. United States*, 137 F.3d 709, 715 (2d Cir.1998) that the government was required to prove actual notice in a forfeiture proceeding where the claimant was incarcerated. The Supreme Court's decision in *Duesenberry v. United States*, 534 U.S. 161 (2002) however, abrogated that holding. *Duesenberry*, 534 U.S. 167 n.3. The Third Circuit noted that where a claimant is housed in a federal facility, the government can more readily ensure delivery of a mailed notice. The First Circuit, in *Whiting v. United States*, 231 F.3d 70 (1st Cir. 2000), compared practices among the circuits with regard to what notice was considered reasonably calculated, under all the circumstances, to apprise the claimant of the action, writing:

> Among circuits that have considered the issue, a clear plurality—the Sixth, Seventh, Ninth, and Tenth Circuits—hold that certified mail to a prisoner is presumptively sufficient. Respected judges in other circuits have taken a different view, but these circuits themselves have not coalesced around a single alternative. The Second Circuit has held that prisoner receipt of notice is required, if a federal criminal case is pending against a federal inmate;[4] the Third Circuit says mailing is adequate if the government offers proof that prison internal-

---

[4] The First Circuit cited to *Yeung Mung Weng v. United States*, 137 F.3d 709 (2d Cir. 1998) which was abrogated by the Supreme Court's decision in *Duesenberry*.

delivery procedures are adequate; and the Eighth Circuit seemingly goes furthest to adopt Whiting's position.

*Whiting*, 231 F.3d at 76–77 (footnotes omitted). In view of the case law, and the affidavit showing the mail delivery methods at the Wayne County Jail, the Court concludes that sending notice to Brome in the Wayne County Jail, although not the best method for notice, was reasonably calculated to apprise Brome of the administrative forfeiture action.

Next Brome argues that even if he did receive the DEA notice of administrative forfeiture, the notice was defective because is listed the wrong seizure date. The DEA used the date that it adopted the Lyons Police Department's seizure, October 7, instead of the date the Lyons police took the currency from Brome's person, September 12. Brome points out that the DEA further erred by using the October 7 date since that was the "adoption" date, per DEA's own forms, and not the "seizure" date. Brome argues that the defective DEA notice failed to meet DEA's own requirements and was invalid.

The notice sent to Brome identified the item seized in a text box in the upper right corner. That text box contained the following information:

| | |
|---|---|
| Asset Id: | 10-DEA-538494 |
| Case Number: | C9-10-0085 |
| Property: | $21,019.00 U.S. Currency |
| Asset Value: | $21,019.00 |
| Seizure Date: | 10/07/2010 |
| Seizure Place: | Lyons, NY |
| Owner Name: | Brome, James S. |
| Seized From: | Brome, James S. |
| Judicial District: | Western District of New York |

Notice of Seizure addressed to James S. Brome, Prisoner ID No. 101700, Wayne County Jail

at 1, Carducci Aff. Ex. 7, May 4, 2016, ECF No. 325-1. Even though the date used by DEA in this notice may have been the "adoption" date and not the "seizure" date, the rest of the information sufficiently identified the property to place Brome on notice that the item being referenced was the cash taken from him upon his arrest by the Lyons police.

## CONCLUSION

The Court finds that the method used to advise Brome of the administrative forfeiture proceeding was sufficient to meet the legal requirements for notice. Accordingly, the Court denies his application challenging the administrative forfeiture, ECF No. 244.

DATED:  March 19, 2018
        Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge